Scott D. Tenley (Cal. Bar No. 298911)
*scott@tenleylaw.com*
**TENLEY LAW, P.C.**
2601 Main Street, Suite 850
Irvine, California 92614
Telephone: (949) 749-2300
Facsimile: (949) 520-6727

Attorneys for Defendant
Christian Damian Cerna Camacho

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> CHRISTIAN DAMIAN CERNA CAMACHO, <br><br> Defendant. | No. 2:25-cr-00505-CV <br><br> **DECLARATION OF SCOTT D. TENLEY IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL DISCLOSURE OF GRAND JURY MATERIALS** <br><br> Hearing Date: October 10, 2025 <br> Hearing Time: 10:30 a.m. <br> Location: Courtroom 10B |

## <u>DECLARATION OF SCOTT D. TENLEY</u>

I, Scott D. Tenley, hereby swear, certify, and affirm that:

1.      I am an attorney licensed to practice law in the state of California and counsel of record to defendant Christian Damian Cerna Camacho.  I am over eighteen years of age and not a party to this action.  I submit this declaration in support of Mr. Cerna's motion to compel disclosure of grand jury materials.

2.      On July 10, 2025, I received a proposed plea agreement for Mr. Cerna which would require him to plead guilty to a single-count Information that is substantially similar to the First Superseding Indictment in this case.  Footnote 1 to the plea offer states, "The superseding information corrects only typographical errors in the indictment; the charge and substance of the charge remain identical to those in the indictment charged by the grand jury in *United States v. Christian Damian Cerna Camacho*, 2:25-cr-00505-CV."

3.      On July 14, 2025, Mr. Cerna appeared for his arraignment on the charges alleged in the original indictment.  During those proceedings, I drew the Court's attention to the text of the indictment and advised that Mr. Cerna could not reasonably answer whether he understood the nature of the charge alleged against him in the indictment.  While Mr. Cerna ultimately entered a not guilty plea, I reserved, on Mr. Cerna's behalf, all rights, defenses, and arguments related to the indictment and the Speedy Trial Act.

4.      Assistant United States Attorney Neil Thakor represented the government at Mr. Cerna's arraignment.  It is my best recollection that Mr. Thakor advised the Court that the issues with the indictment were typographical errors and that the government would correct them.

5.      Attached hereto as Exhibit 1 is a true and correct copy of an unsigned Indictment filed on the docket in *United States v. Ramos-Brito*, No. 2:25-cr-00501-SVW.

6.     Attached hereto as Exhibit 2 is a true and correct copy of a *Los Angeles Times* article entitled "Trump's top federal prosecutor in L.A. struggles to secured indictments in protest cases," dated July 23, 2025.

7.     Attached hereto as Exhibit 3 is a true and correct copy of a *Guardian* article entitled "Dropped cases from LA protestors reveal false claims from federal agents," dated July 28, 2025.

8.     Attached hereto as Exhibit 4 is a true and correct copy of a *New York Times* article entitled, "Grand Juries in D.C. Reject Wave of Charges Under Trump's Crackdown," dated September 6, 2025.

9.     On August 18, 2025, I conferred with Assistant United States Attorney Mikaela Gilbert-Lurie regarding discovery matters, including my request for disclosure of grand jury materials.  Ms. Gilbert-Lurie indicated that she opposed disclosure of grand jury materials and that Mr. Cerna should file his motion.  I further conferred about grand jury materials with Ms. Gilbert-Lurie and Assistant United States Attorney Andrew Roach on August 20, 2025, but we were unable to resolve the parties' impasse. Mr. Roach asserted that, to the extent any review of grand jury materials was necessary, those materials could be reviewed by the Court *in camera* and need not be disclosed to Mr. Cerna.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 8th day of September 2025, in Irvine, California.

_____
SCOTT D. TENLEY

DECLARATION OF SCOTT D. TENLEY

# Exhibit 1

FILED
CLERK, U.S. DISTRICT COURT

6/18/2025

CENTRAL DISTRICT OF CALIFORNIA
BY: ___MMC___ DEPUTY

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9               FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,          CR No. 2:25-CR-00501-SVW

11             Plaintiff,               I N D I C T M E N T

12             v.                       [18 U.S.C. § 111(a)(1): Simple
                                        Assault on Federal Officer]
13   BRAYAN RAMOS-BRITO,
         aka, "Brian Ramos-Brito,"      [CLASS A MISDEMEANOR]
14

15             Defendant.

16

17        The Grand Jury charges:

18                 [18 U.S.C. §§ 111(a)(1), 2(a)]

19        On or about June 7, 2025, in Los Angeles County, within the

20   Central District of California, defendant BRAYAN RAMOS-BRITO, also

21   known as "Brian Ramos-Brito," and others known and unknown to the

22   Grand Jury, each aiding and abetting the others, intentionally and

23   forcibly assaulted, resisted, impeded, intimidated, and interfered

24   with victim J.M., an employee of the United States Border Patrol,

25   //

26   //

27

28

1    while J.M. was engaged in, and on account of, the performance of

2    J.M.'s official duties.

3

4

5                                              A TRUE BILL

6

7                                              _____

8                                              Foreperson

9    BILAL A. ESSAYLI
     United States Attorney
10
     CHRISTINA T. SHAY
11   Assistant United States Attorney
     Chief, Criminal Division
12

13   *Frances S. Lewis* (signature)

14   FRANCES S. LEWIS
     Assistant United States Attorney
15   Chief, General Crimes Section

16   SHAWN T. ANDREWS
     Assistant United States Attorney
17   Deputy Chief, General Crimes Section

18   JOSHUA J. LEE
     Assistant United States Attorney
19   General Crimes Section

20

21

22

23

24

25

26

27

28

# Exhibit 2

Case 2:25-cr-00505-CV    Document 49-1    Filed 09/08/25    Page 8 of 35    Page ID #:195

≡        yahoo!news        Sign in

🔍 Search the web

**Top Stories:** Birthright citizenship policy | Trump's approval rating | Deadly Manhattan shooting | Dangerous he

*Los Angeles Times*

# Trump's top federal prosecutor in L.A. struggles to secure indictments in protest cases

**James Queally, Brittny Mejia**
Wed, July 23, 2025 at 1:59 PM PDT
10 min read

🗗  💬 797



Bill Essayli, 39, a former state Assembly member from Riverside, has been serving as the U.S. attorney in Los Angeles since April. (Rich Pedroncelli / Associated Press)

To bystanders at the federal courthouse in downtown Los Angeles, it sounded as though U.S. Atty. Bill Essayli would not take no for an answer.

A prosecutor had the irate Trump administration appointee on speakerphone outside the grand jury room, and his screaming was audible, according to three law enforcement officials aware of the encounter who spoke on condition of anonymity for fear of reprisals.

The grand jury had just refused to indict someone accused of attacking federal law enforcement officers during protests against the recent immigration raids throughout Southern California, two of the federal officials said.

ADVERTISEMENT

It was an exceedingly rare outcome after a type of hearing that routinely leads to federal charges being filed.

On the overheard call, according to the three officials, Essayli, 39, told a subordinate to disregard the federal government's "Justice Manual," which directs prosecutors to bring only cases they can win at trial. Essayli barked that prosecutors should press on and secure indictments as directed by U.S. Atty. Gen. Pam Bondi, according to the three officials.

**Read more:** Deaf, mute and terrified: ICE arrests DACA recipient and ships him to Texas

Court records show the reason for Essayli's frustration.

ADVERTISEMENT

Although his office filed felony cases against at least 38 people for alleged misconduct that either took place during last month's protests or near the sites of immigration raids, many have been dismissed or reduced to misdemeanor charges.

In total, he has secured only seven indictments, which usually need to be obtained no later than 21 days after the filing of a criminal complaint. Three other cases have been resolved via plea deal, records show.

The three officials who spoke to The Times on condition of anonymity said prosecutors have struggled to get several protest-related cases past grand juries, which need only to find probable cause that a crime has been committed in order to move forward. That is a much lower bar than the "beyond a reasonable doubt" standard required for a criminal conviction.

Five cases have been dismissed without prejudice — meaning they could be refiled — and records show nine have been filed as misdemeanors, which do not require a grand jury indictment to proceed. In some cases, prosecutors reduced

charges against defendants to misdemeanors after repeatedly falling short at
the grand jury stage, according to the three officials.

ADVERTISEMENT

Essayli declined to be interviewed for this article. A statement provided by his
office on Tuesday accused The Times of spreading "factual inaccuracies and
anonymous gossip," but offered no specifics or further comment in response to
questions.

"The U.S. Attorney's Office will continue working unapologetically to charge all
those who assault our agents or impede our federal investigations," the
statement said.

**Read more:** Trump immigration raids move north to Sacramento: 'No such thing
as a sanctuary state'

Legal experts said Essayli's low number of indictments raised concerns about
the strength of the cases he is filing.

ADVERTISEMENT

Carley Palmer, a former federal prosecutor in L.A. who is now a partner at
Halpern May Ybarra Gelberg, said the grand jury's repeated rejection of cases
was "a strong indication that the priorities of the prosecutor's office are out of
sync with the priorities of the general community."

Essayli has won indictments in some serious cases, including two where
defendants are accused of throwing or planning to throw Molotov cocktails at
L.A. law enforcement officers, and a case where defendants allegedly fired a
paintball gun at federal police.

High-ranking Justice Department officials have repeatedly praised his work.

"My friend, U.S. Attorney Bill Essayli, is a champion for law and order who has
done superlative work to prosecute rioters for attacking and obstructing law
enforcement in Los Angeles," Bondi said in a statement to The Times.



Atty. Gen. Pam Bondi speaks during a news conference at the Justice Department on June 6 in Washington. (Julia Demaree Nikhinson / Associated Press)

But legal experts and some of Essayli's prosecutors say he's stretching legal limits to serve as President Trump's attack dog in L.A.

ADVERTISEMENT

"It's just generally a culture of 'if Bill asks you to jump, you ask how high,'" said one prosecutor who feared retaliation. "Any case he wants to charge, find a way to make it a yes."

Questions about Essayli's effectiveness come at a crucial time for the former California Assembly member. Bondi appointed him in early April, giving him 120 days to serve as interim U.S. attorney until receiving Senate approval. If he is not confirmed by then, a panel of federal judges will have the opportunity to appoint him — or someone else — to the position.

Democratic Sens. Adam Schiff and Alex Padilla of California raised concerns about Essayli's leadership of the office in interviews with The Times, and a direct approval from the bench is no sure thing. This month, a federal judicial panel blocked Trump's choice for U.S. attorney in upstate New York after the time limit for Senate confirmation had expired.

On Tuesday, another judicial panel declined to appoint New Jersey's interim federal prosecutor, Alina Habba, one of Trump's former personal lawyers. Bondi, however, decried the judges for going "rogue," fired their choice for U.S. attorney and reappointed Habba. Legal experts say the move is unprecedented.

ADVERTISEMENT

Meghan Blanco, a former federal prosecutor in L.A. who serves as defense counsel to one of the protesters who is facing charges, said the cases are faltering in part because of unreliable information provided by immigration agents claiming to be victims.

"Frankly, they're not deserving of prosecution," she said. "What is being alleged isn't a federal crime, or it simply did not happen."

Blanco represents Jose Mojica, who was accused of pushing a federal officer in Paramount on June 7.

According to an investigation summary of the incident reviewed by The Times, a U.S. Border Patrol officer claimed a man was screaming in his face that he was going to "shoot him," then punched him. The officer said he and other agents started chasing the man, but were "stopped by two other males," later identified as Mojica and Bryan Ramos-Brito.

ADVERTISEMENT

Blanco said she obtained social media videos showing no such chase took place and presented them at Mojica's first court appearance. The charges were soon dropped.

"The agent lied and said he was in hot pursuit of a person who punched him," Blanco said. "The entirety of the affidavit is false."

Felony charges against Ramos-Brito and two related defendants, Ashley and Joceline Rodriguez, were also dismissed, though prosecutors refiled misdemeanor cases against them.

Christian Cerna-Camacho, the man who allegedly punched an agent, has been indicted. He has pleaded not guilty, with trial set for next month.

ADVERTISEMENT

**Read more:** Border Patrol agent charged with drunkenly attacking Long Beach
cop while off duty

Similar issues arose in the case of Andrea Velez, who was charged on June 25
with assaulting a federal officer. The criminal complaint alleged Velez, who is 4
feet 11 inches, stood in the path of an Immigration and Customs Enforcement
officer with her arms extended, striking his head and chest when they collided.

Diane Bass, Velez's attorney, said the incident occurred when masked,
unidentified men in plainclothes pulled up to question a downtown L.A. street
vendor.

Velez had just been dropped off for work when some of the masked men ran at
her and one shoved her to the ground, Bass said. Velez, fearing she was being
abducted, held up her work bag to shield herself.

ADVERTISEMENT

Bass requested body-worn camera video and witness statements cited in the
complaint. Soon after, she said, the prosecutor dismissed the case.

One of the three officials, who was not authorized to speak publicly, said
concerns are growing among prosecutors about the accuracy of statements by
federal immigration agents that serve as the basis for criminal charges.

"There are a lot of hotheaded [Customs and Border Protection] officers who are
kind of arresting first and asking questions later. We're finding there's not
probable cause to support it," said the prosecutor, who requested anonymity
over concerns of repercussions.



A demonstrator waves a Mexican flag in front of a dumpster fire after another night of unrest during a protest against immigration raids on June 8, 2025 in Los Angeles, California. (Gina Ferazzi/Los Ang...More

One case under close scrutiny is that of Adrian Martinez, a 20-year-old charged in a criminal complaint last month with conspiracy to impede a federal officer.

Martinez said he was on a break from his job at Walmart when he spotted immigration agents chasing down a custodial worker, and told them to leave the man alone.

Video shows Martinez being thrown to the ground and shoved into a truck, which he said took him to a parking structure.

Once there, Martinez said, he was told he'd been arrested for assaulting a federal officer by striking an agent in the face and breaking his glasses. Martinez, who weighs around 150 pounds, said the agents arresting him pointed to the colleague he was being accused of attacking, who looked "like a grizzly bear."

"I don't even remember you," Martinez recalled saying. "It just seemed like they were trying to get me to say like, 'yes, you assaulted him,' but I knew I didn't."

The next day, Essayli posted a photo on X of Martinez, still in his blue Walmart vest. Martinez, he wrote, had been arrested "for an allegation of punching a border patrol agent in the face."

The criminal complaint makes no reference to a punch and video taken at the scene does not clearly show Martinez striking anyone. Federal prosecutors instead charged Martinez with conspiracy to impede a federal officer, alleging he blocked federal law enforcement vehicles with his car and then later a trash can.

Ciaran McEvoy, a spokesman for the U.S. attorney's office, previously told The Times that complaints do not always include "the full scope of a defendant's conduct, or the evidence that will be presented at trial."

A Department of Homeland Security spokesperson said the agency could not comment on cases under active litigation.

"Our officers are facing a surge in assaults and attacks against them as they put their lives on the line to enforce our nation's laws," the Homeland Security statement said.

Charges against nonviolent defendants have repeatedly raised alarm bells among current and former federal prosecutors. In early June, union leader David Huerta was charged with conspiracy to impede a federal officer for allegedly interfering with immigration enforcement actions in the downtown L.A. garment district. Legal experts said Huerta's conduct did not appear criminal.

"Where do you draw the line between an organized protest and a conspiracy to impede?" Laurie Levenson, a former federal prosecutor and professor at Loyola Law School in Los Angeles, asked last month. "It'll actually be interesting to see if a grand jury indicts these cases."

Huerta has denied all wrongdoing and his attorney did not respond to a request for comment. A deadline of Aug. 5 looms for prosecutors to secure an indictment.

Court filings show some prosecutors appear to be refusing to sign their names to contentious cases.

An indictment returned against Alejandro Orellana — who is accused of conspiracy and aiding in civil disorder for passing out gas masks at a protest scene in early June — was signed only by Essayli and his second-in-command, Jennifer Waier, records show. Such cases are typically handled by rank-and-file assistant U.S. attorneys.

In early May, when Essayli pushed to offer a lenient plea deal to L.A. County Sheriff's Deputy Trevor Kirk months after a jury convicted him of assaulting a woman during a 2023 arrest, several prosecutors refused to sign the document asking for the deal, and some later resigned.

*Times staff writer Kevin Rector contributed to this report.*

Sign up for Essential California for news, features and recommendations from the L.A. Times and beyond in your inbox six days a week.

This story originally appeared in Los Angeles Times.

💬  **View comments (797)**

Terms and Privacy Policy        Your Privacy Choices        CA Privacy Notice        About Our Ads

# Exhibit 3

Case 2:25-cr-00505-CV    Document 49-1    Filed 09/08/25    Page 18 of 35    Page ID
#:205

News      |    Opinion    |   Sport    |   Culture    |   Lifestyle                              ☰

**Los Angeles**

# Dropped cases against LA protesters reveal false claims from federal agents

Revealed: records show border patrol gave inaccurate testimony about people it jailed. Prosecutors now face 'embarrassing' dismissals

Case 2:25-cr-00505-CV   Document 49-1   Filed 09/08/25   Page 19 of 35   Page ID #:206



📷 Law enforcement officers arrest a demonstrator outside the federal building as protests continue in response to federal immigration operations in Los Angeles on 10 June. Composite: The Guardian/Getty Images

**Sam Levin** *in Los Angeles*

Mon 28 Jul 2025 07.00 EDT

US immigration officers made false and misleading statements in their reports about several Los Angeles protesters they arrested during the massive demonstrations that rocked the city in June, according to federal law enforcement files obtained by the Guardian.

The officers' testimony was cited in at least five cases filed by the US Department of Justice amid the unrest. The justice department has charged at least 26 people with "assaulting" and "impeding" federal officers and other crimes during the protests over immigration raids. Prosecutors, however, have since been forced to dismiss at least eight of those felonies, many of them which relied on officers' inaccurate reports, court records show.

The justice department has also dismissed at least three felony assault cases it brought against Angelenos accused of interfering with arrests during recent immigration raids, the documents show.

Case 2:25-cr-00505-CV  Document 49-1  Filed 09/08/25  Page 20 of 35  Page ID #:207

The rapid felony dismissals are a major embarrassment for the Trump-appointed US attorney for southern California, Bill Essayli, and appeared to be the result of an unusual series of missteps by the justice department, former federal prosecutors said.

The Guardian's review of records found:

Out of nine "assault" and "impeding" felony cases the justice department filed immediately after the start of the protests and promoted by the attorney general, Pam Bondi, prosecutors dismissed seven of them soon after filing the charges.

In reports that led to the detention and prosecution of at least five demonstrators, Department of Homeland Security (DHS) agents made false statements about the sequence of events and misrepresented incidents captured on video.

One DHS agent accused a protester of shoving an officer, when footage appeared to show the opposite: the officer forcefully pushed the protester.

One indictment named the wrong defendant, a stunning error that has jeopardized one of the government's most high-profile cases.

"When I see felonies dismissed, that tells me either the federal officers have filed affidavits that are not truthful and that has been uncovered, or US attorneys reviewing the cases realize the evidence does not support the charges," said Cristine Soto DeBerry, a former California state prosecutor who is now director of Prosecutors Alliance Action, a criminal justice reform group.

She said officers often call for charges that prosecutors don't end up filing, but it was uncommon for the justice department to file, then dismiss cases, especially numerous felonies in rapid succession.

"It seems this is a way to detain people, hold them in custody, instill fear and discourage people from exercising their first amendment rights," DeBerry said.

There are at least 18 cases brought by the justice department against LA protesters that prosecutors have not dismissed, covering a wide array of alleged criminal conduct, according to case records the US attorney's office shared with the Guardian. In three of those cases, protesters have agreed to plea deals, including one defendant accused of spitting at an officer and another who allegedly threw rocks. Some still facing charges are accused of throwing bottles and molotov cocktails, pointing a laser at a helicopter and aiding in civil disorder by distributing gas masks.

In six of the felony dismissals reviewed by the Guardian, the justice department has refiled lower-level misdemeanors against the defendants.

Dropped cases against LA protesters reveal false claim from federal agents | Los Angeles | The Guardian

For the many protesters whose charges were withdrawn or scaled back, the officers' initial allegations, as well as the department's filings, have deeply affected their lives. All the demonstrators who won dismissals spent time in jail before the government's cases against them fell apart.

"We are not the violent ones," said Jose Mojica, one of the protesters whose assault case was dismissed, in an earlier Guardian interview. "They are chasing down innocent people."

## Dismissed 'in the interest of justice'

The justice department's initial wave of cases stemmed from one of the first major protests in the LA region, a demonstration on 7 June in the south Los Angeles city of Paramount. Border patrol sightings had sparked fears that agents were targeting laborers at a Home Depot, and as dozens of locals and demonstrators gathered outside an office complex that houses DHS, officers fired teargas and flash-bang grenades while some protesters threw objects.

The US attorney's office filed a joint case against five demonstrators, charging each with assaulting officers, a felony the justice department warned could carry 20-year sentences.

A criminal complaint, written by DHS and filed in court by the justice department on 8 June, said that as the crowd grew, some protesters "turned violent". Two sisters, Ashley, 20, and Joceline Rodriguez, 26, began "blocking" officers' vehicles, the complaint alleged. When a border patrol agent attempted to move Ashley, she "resisted" and "shoved the agent with both her hands", then Joceline "grabbed the arm" of one of the agents to prevent her sister's arrest, the charges said. Both were arrested.

In an investigative file, the DHS suggested that "in response" to the sisters' arrest, Christian Cerna-Camacho, another protester, began to "verbally harass" agents, making threatening remarks. Demonstrator Brayan Ramos-Brito, then "pushed [an] agent in the chest", the DHS claimed, at which point, a fifth protester, Jose Mojica, "used his body to physically shield" Ramos-Brito and then "elbowed and pushed" agents. Agents then "subdued" and arrested Mojica and Ramos-Brito, the complaint said.

Case 2:25-cr-00505-CV  Document 49-1    Filed 09/08/25    Page 22 of 35    Page ID #:209



📷 A protester holds a sign as he stands in front of federal agents as the groups clashed near a Home Depot after a raid was conducted Ice in Paramount on 7 June. Photograph: Allison Dinner/EPA

All five defendants are Latino US citizens.

The DHS's own subsequent reports, however, reveal multiple factual discrepancies in the narrative initially presented by officers and prosecutors. While the complaint suggested Cerna-Camacho, Ramos Brito and Mojica attacked agents in protest of the sisters' arrest, records show the women were arrested in a separate incident – which occurred after the men were detained.

Border patrol agent Eduardo Mejorado, a key witness considered a victim of the assaults, appeared to initially give inaccurate testimony about the order of events. He "clarified" the timeline when questioned, a DHS special agent wrote in a report three days after charges were filed. A supervisor on the scene also documented the correct chronology in a later report and "apologized" for errors, saying, "Due to the chaos of the events that day, some events may have been miscommunicated." Mojica had outlined the discrepancies in an interview with the Guardian days after his arrest.

The DHS special agent also noted that defense lawyers had presented video they said was "in direct contrast to the facts" laid out in the initial complaint. The footage, seen by the Guardian, appeared to show an agent pushing Ramos-Brito, not the other way around, before he was taken to the ground along with Mojica, who was also not seen in the footage shoving or assaulting agents.

7/29/25, 12:16 PM
Case 2:25-cr-00505-CV Document 49-1 Filed 09/08/25 Page 23 of 35 Page ID #:210
DHS dropped cases against LA protesters, revealing false claim of 2 federal agents | Los Angeles | The Guardian

The agent acknowledged the officer's shoving and said the subsequent "fight" was "hard to decipher". The agent also claimed Ramos-Brito's behavior before he was pushed included "pre-assault indicators", such as "clenching fists" and "getting in [the agent's] face".

Meanwhile, chaotic social media footage of the arrest of the sisters appeared to show an officer pushing Ashley, prompting her to briefly raise her hand, at which point two agents grabbed her and took her to the ground. Her older sister was then seen briefly touching the arm of one of the agents on top of her sister. Both appeared to be filming with their phones before their arrests, and it's unclear who the DHS and the justice department were alleging were the victims in their purported assaults.

DHS records also show that one supervisor emailed a female border patrol agent seen in the video standing near the sisters, saying he was "trying to tie that whole event together for prosecution" and looking into a "rumor" Ashley "may have shoved" this agent. The agent responded that she had told Ashley to move, but did not say she was shoved.

Within two weeks of the initial charges, the US attorney's office filed motions to dismiss the cases against the sisters, Ramos-Brito and Mojica "in the interest of justice", without providing further explanation.

The justice department then filed a new case against the sisters, this time accusing them each of a single misdemeanor, saying they "assaulted, resisted, opposed, impeded, intimidated, and interfered with" the border patrol, but offering no detail. The sisters pleaded not guilty to the misdemeanors; Ashley's lawyer declined to comment and Joceline's attorney did not respond to inquiries.

The justice department also filed a misdemeanor indictment against Ramos-Brito, but then said it was erroneous and rescinded it, only to refile a misdemeanor in a different format. Ramos-Brito pleaded not guilty and his lawyer didn't respond to emails.

Mojica, who spoke out about how he was injured during his arrest, has not been charged again.

Essayli, the US attorney for LA, who is an ardent Trump supporter appointed this year, initially published mugshots of the defendants, but has not publicly acknowledged that he has since dismissed their felonies. Ciaran McEvoy, a spokesperson for Essayli, declined to comment on a detailed list of questions about specific cases. The LA Times reported last week that Essayli was heard "screaming" at a prosecutor over a grand jury's refusal to indict one of the protesters.

Case 2:25-cr-00505-CV Document 49-1 Filed 09/08/25 Page 24 of 35 Page ID #:211



📷 Law enforcement clashes with demonstrators during a protest following federal immigration operations, in the Compton neighborhood of Los Angeles on 7 June. Photograph: Ringo Chiu/AFP/Getty Images

McEvoy said the LA Times story relied on "factual inaccuracies and anonymous gossip", without offering specifics, adding in an email: "Our office will continue working unapologetically to charge all those who assault our agents or impede our federal investigations."

Bondi defended Essayli in a statement, calling him a "champion for law and order who has done superlative work to prosecute rioters for attacking and obstructing law enforcement in Los Angeles". She added: "This Department of Justice is proud of Bill, and he has my complete support as he continues working to protect Californians and Make America Safe Again."

Jaime Ruiz, a spokesperson for Customs and Border Protection, which oversees border patrol, did not respond to detailed questions about cases and officers' inaccurate testimony, saying the department is "unable to comment on cases under active litigation".

"DHS and its components continue to enforce the law every day in greater Los Angeles even in the face of danger," he added. "Our officers are facing a surge in assaults and attacks against them as they put their lives on the line to enforce our nation's laws. Secretary [Kristi] Noem has been clear: If you obstruct or assault our law enforcement, you will be prosecuted to the fullest extent of the law."

Tricia McLaughlin, DHS assistant secretary, added in a statement: "Our agents, officers, and prosecutors will continue to work together to keep

Americans safe, and we will follow the facts, evidence, and law." Mejorado, the border patrol agent, could not be reached.

Cerna-Camacho is the only defendant of the five whose original charges are still pending, but when he showed up to court for his recent arraignment, the justice department attorney was forced to admit his office had made an error: the one-paragraph indictment filed against Cerna-Camacho erroneously named Ramos Brito. Cerna-Camacho's lawyers have argued that the government's 30-day window to indict his client had passed, and the case must be dismissed. Cerna-Camacho pleaded not guilty, and his lawyer declined to comment.

"This is an extraordinary mistake and a dangerous embarrassment," said Sergio Perez, a former justice department lawyer who is now executive director of the Center for Human Rights and Constitutional Law, a California-based legal advocacy group, about Cerna-Camacho's case. "The US Department of Justice is supposed to be the pinnacle of professional and responsible criminal prosecutions. When you can't get the name right, it calls into question all other factual assertions in those documents. It's way beyond a clerical error. It's smoke where there is likely fire."

The case is a significant one for the Trump administration. Cerna-Camacho was arrested four days after the protest, when two unmarked vehicles rammed his car while his toddler and infant were inside, with officers deploying teargas. The incident caused outrage locally.

But DHS aggressively defended the arrest, publishing a photo of Cerna-Camacho being detained, and saying he had "punched" a border patrol officer at the Paramount protests. Video from the protest showed Cerna-Camacho and an officer scuffling in a chaotic crowd, with Cerna-Camacho at one point raising his hand, but it's unclear if he made contact with the officer.

## More cases crumble

In an initial complaint against Jacob Terrazas, DHS accused the man of felony assault, saying he was "one of several individuals … actively throwing hard objects [at officers]" during the Paramount protests, without referencing specific evidence or details. Video of his arrest showed an officer slamming him to the ground, and at his arraignment, Terrazas appeared badly concussed, and a judge ordered he immediately get medical attention.

Terrazas was released after nine days in jail, then two days later, the justice department moved to dismiss the case. However, prosecutors filed a new misdemeanor charge, accusing him of a "simple assault" misdemeanor, saying he "aided and abetted" others and "forcibly assaulted, resisted,

7/29/25, 12:16 PM
Dropped cases against LA protesters reveal false claims from federal agents | Los Angeles | The Guardian

Case 2:25-cr-00505-CV   Document 49-1   Filed 09/08/25   Page 26 of 35   Page ID #:213

opposed, impeded, intimidated, and interfered with" a border patrol employee, without providing details. Terrazas has pleaded not guilty, and his lawyer did not respond to inquiries.

The government has also dismissed its "conspiracy to impede an officer" felony charges against Gisselle Medina, but then filed an "accessory" to "assault" misdemeanor, claiming in a brief charging document that she had "assisted the offenders". The charges did not offer any details on how she allegedly assisted others. Medina has not yet been arraigned and her lawyer did not respond to inquiries.

The justice department also recently dismissed felony assault charges against Russell Gomez Dzul, who had been stopped on 7 June by border patrol when officers deemed him suspicious for appearing "nervous" near them and biking away, but then filed a simple assault misdemeanor, without offering details. He has pleaded not guilty and his lawyer did not respond to requests for comment. Andrea Velez, a US citizen arrested during a 24 June raid in downtown LA on her way to work, also had a felony assault charge dismissed this month, and has not faced further prosecution.



📷 A large crowd fills the streets during an anti-Ice protest in downtown Los Angeles. Photograph: Sahab Zaribaf/Middle East Images/AFP/Getty Images

One of the only cases from the first round of prosecutions that the government has not dropped is the one that made international headlines – the arrest of David Huerta, a prominent California union leader jailed while observing an immigration raid.

Dropped cases against LA protesters reveal false claims from federal agents | Los Angeles | The Guardian

Carley Palmer, a lawyer who served as a supervisor in the US attorney's office in LA until she left last year, said the dismissals and downgrading of charges probably occurred after more in-depth evaluation by line prosecutors and supervisors, and in some ways reflected "the process working": "We want prosecutors to feel they can re-evaluate evidence and change their mind when new information comes to light." Prosecutors might dismiss cases if a grand jury declines to indict, if they believe they can't persuade jurors at trial, or if they learn officers violated the defendants' rights, she added.

The LA Times reported that Essayli has struggled to secure indictments at grand juries.

Palmer, now an attorney at the Halpern May Ybarra Gelberg firm, said it was unusual, however, for the office to prosecute these kinds of "he said she said" protest scuffles in the first place, taking away resources from traditional priorities, including fraud, economic crimes, public corruption and civil rights abuses.

"Federal charges are very serious and have real implications for people's lives," Palmer added. "Even if it gets dismissed, it will be on someone's record for the rest of their lives. It carries a lot of consequences, so you want prosecutors to understand and appreciate the power they have."

# Exhibit 4

# Grand Juries in D.C. Reject Wave of Charges Under Trump's Crackdown

The persistent rejections suggest that the grand jurors may have had enough of prosecutors seeking harsh charges in a highly politicized environment.

▶  **Listen to this article · 8:13 min**  Learn more

 **By Alan Feuer**

Sept. 6, 2025

In the three weeks since President Trump flooded the streets of Washington with hundreds of troops and federal agents, there have been only a few scattered protests and scarcely a word from Congress, which has quietly gone along with the deployment.

But one show of resistance has come from an extraordinary source: federal grand jurors.

In what could be read as a citizens' revolt, ordinary people serving on grand juries have repeatedly refused in recent days to indict their fellow residents who became entangled in either the president's immigration crackdown or his more recent show of force. It has happened in at least seven cases — including three times for the same defendant.

Given the secretive nature of grand juries, it is all but impossible to know precisely why this has been happening, but the persistent rejections suggest that grand jurors may have had enough of prosecutors seeking harsh charges in a highly politicized environment.

Courthouse wits have long quoted Judge Sol Wachtler, the former New York jurist who said that prosecutors are in such complete control of grand juries that they could get them to indict a ham sandwich. But that old saw did not hold true in the rebellion in Federal District Court in Washington, where grand jurors seem to have taken a stand in defense of their community.

9/8/25, 9:24 AM
Grand Juries in D.C. Reject Wave of Charges Under Trump's Crackdown - The New York Times
Case 2:25-cr-00505-GW   Document 42-1   Filed 09/08/25   Page 30 of 35   Page ID
#:217

"First of all, it is exceedingly rare for any grand jury to reject a proposed indictment because ordinarily prosecutors use discretion in only bringing cases that are strong and advance the interests of justice," said Barbara L. McQuade, a former U.S. attorney in Detroit who teaches at the University of Michigan Law School. "I have seen this maybe once or twice in my career of 20 years, but this is something different."

"My guess," Ms. McQuade went on, "is that these grand jurors are seeing prosecutorial overreach and they don't want to be part of it."

While crime has fallen in Washington since National Guard troops and federal agents started to police the streets in large numbers in mid-August, the deployment has chafed many local residents, who have found their presence to be a source of anxiety, not security. And because of the deployment, a flurry of defendants have been charged with federal felonies in cases that would typically have been handled at the local court level, if they were brought at all.

Many of these cases have recently been downgraded or dismissed altogether after failing in grand juries, a tacit acknowledgment by the U.S. attorney's office in Washington that they were overcharged to begin with. The most prominent example is the case of Sean C. Dunn, a former Justice Department paralegal who was charged with felony assault after he threw a sub-style salami sandwich at a federal agent on patrol near the corner of 14th and U Streets. His charges were knocked down to a misdemeanor last week after prosecutors were unable to indict him.

While Mr. Dunn's case has become a cause célèbre, inspiring Banksy-style images of figures hurling hoagies on walls across the city, other cases have also crashed and burned, without as much publicity.



The case of Sean C. Dunn, a former Justice Department paralegal who threw a sub-style salami sandwich at a federal agent on patrol, has inspired Banksy-style graffiti across Washington. Eric Lee for The New York Times

On Friday, for example, about a week after failing to obtain an indictment, prosecutors dismissed a case against Nathalie Rose Jones, an Indiana woman who had been arrested on felony charges of threatening to kill Mr. Trump on social media.

Ms. Jones, who has been described by friends as being mentally ill, was taken into custody on Aug. 16 after she attended a march outside the White House. Secret Service agents, who had seen her posts calling Mr. Trump a Nazi and saying that she wanted to disembowel him, had interviewed her twice before the protest but did not initially seek to detain her.

On Thursday, prosecutors had moved to dismiss another threat case after it, too, failed in the grand jury. This one had been brought against Edward Alexander Dana, a self-described "person with intellectual disabilities" who was arrested on Aug. 21 also on charges of having threatened to to kill Mr. Trump.

The decision to dismiss the case in federal court and refile it as a misdemeanor in the lower Superior Court came after videos emerged of Mr. Dana telling a police officer in a slurring voice that he had drunk "seven alcoholic beverages" that night, court papers say.

Another video, the papers assert, showed Mr. Dana at the police station "cordially thanking the officers and lying on the floor, singing and yelling non sequitur, incomprehensible statements."

These grand jury refusals to indict, while remarkable on their own, point to a broader breakdown in the bonds of trust that judges have traditionally afforded to government lawyers when they show up in court.

The erosion of this trust — known in legal parlance as the presumption of regularity — has been widespread in the many civil cases challenging Mr. Trump's political agenda, where judges have repeatedly accused Justice Department lawyers of misleading them or violating their orders.

But now the phenomenon has started to crop up in criminal cases, too. It first occurred in July in Los Angeles, where prosecutors struggled to obtain indictments against several protesters arrested at demonstrations against federal immigration actions.

In Washington, the grand jury failures have led to tensions between some federal judges and Jeanine Pirro, the tough-talking, gravel-voiced former Fox News co-host who took over the U.S. attorney's office in May.

Ms. Pirro has not taken kindly to news reports about her office's challenges with grand juries. Appearing on "Fox News Sunday" last weekend after prosecutors failed to indict Mr. Dunn, she went on to complain about the city's grand jurors. Many of them, she surmised, "live in Georgetown or in Northwest or in some of these better areas" where, as she put it, "they don't see the reality of crime."

"The fact that they're so used to crime," Ms. Pirro went on, "that crime is so normalized in D.C., that they don't even care about whether or not the law is violated is the very essence of what my problem is in D.C."



Jeanine Pirro, the U.S. attorney in Washington, recently
took to television to complain about the city's grand jurors.
Haiyun Jiang/The New York Times

Such remarks, while clearly self-serving, were hardly the first time that a supporter of
the president had complained about the supposedly liberal bias of the jury pool in
Washington. Scores of rioters who took part in the storming of the Capitol on Jan. 6, 2021,
sought to have their trials moved out of the city, arguing — without success — that local
jurors would never treat them fairly.

Still, Ms. Pirro's anger did not end with Mr. Dunn's case. After prosecutors failed to indict
Mr. Dana, she took aim at Magistrate Judge Zia M. Faruqui, who oversaw the case.

Judge Faruqui, who worked as a prosecutor in Ms. Pirro's office before she took control of it, has been very outspoken about what he sees as his former colleagues' failures. In June, before the federal troops and agents arrived, he excoriated prosecutors for trying to persuade him that he needed to be "highly deferential" to their request to keep a search warrant secret.

"Blind deference to the government?" he wrote. "That is no longer a thing. Trust that has been earned over generations has been lost in weeks."



Magistrate Judge Zia M. Faruqui has been outspoken about what he sees as his former colleagues' failures. Craig Hudson for The Washington Post, via Getty Images

Judge Faruqui again erupted at the government in federal court on Thursday after prosecutors asked him to drop the Dana case, saying they were past the point of "losing credibility." He lambasted his former office for having carelessly filed charges against people during Mr. Trump's deployment in what he said appeared to be an effort to get attention on "Twitter or Truth Social."

He also criticized Ms. Pirro for having one of her underlings, an assistant U.S. attorney, handle the dismissal of the case instead of doing it herself.

"When I was an A.U.S.A. and something had to be dismissed or a difficult decision had to be made, the criminal chief appeared, the U.S. attorney appeared," he said. "Because that's what leaders do. That's leading from the front."

Hours later, Ms. Pirro fired back, assailing Judge Faruqui on social media in a way that all but ensured the tension would continue.

"This judge took an oath to follow the law, yet he has allowed his politics to consistently cloud his judgment and his requirement to follow the law," she wrote. "America voted for safe communities, law and order, and this judge is the antithesis of that."

**Alan Feuer** covers extremism and political violence for The Times, focusing on the criminal cases involving the Jan. 6 attack on the Capitol and against former President Donald J. Trump.

---

A version of this article appears in print on , Section A, Page 1 of the New York edition with the headline: The New Front Of Resistance: Grand Juries